(56 Misc. Rep. 664.)

## ANDERSON v. HEBBARD.

(Supreme Court, Appellate Term. December 20, 1907.)

LANDLORD AND TENANT—LEASE—OPTION TO CANCEL—NOTICE.

A lease of an apartment for 18½ months, terminating September 1, 1907, provided that the landlord should have the right to cancel the lease at any time during the term, on 30 days' notice, prior to the date of the cancellation, of his intent so to do. On March 5, 1907, an agent of the owner wrote to the tenant that the rent of the apartment would be at the rate of $60 per month after May 1st next, and asked the tenant to notify him whether he wished to keep the apartment at this rent. *Held*, not the 30 days' notice required by the lease for its cancellation, but sent under a mistaken impression that the lease expired by its express terms on May 1st, and intended as an invitation to the tenant to stay, providing he would meet the increase of rental.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Chauncey Anderson against Gilbert C. Hebbard, Jr. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before GILDERSLEEVE, P. J., and McCALL and FORD, JJ.

Anderson, Pendleton & Anderson, for appellant.
Walradt, Blaney & Hord, for respondent.

McCALL, J. The relation existing between the parties to this litigation was that of landlord and tenant, and is defined in a written instrument of lease of an apartment in the building, 687 Lexington avenue, in this city. The term of holding therein defined was a period of 18½ months, beginning on February 15, 1906, and terminating on September 1, 1907, at a fixed rental of $50 per month. The lease, however, contained this clause:

"It is hereby expressly understood and agreed that the said party of the first part (the landlord) retains the right and privilege of canceling this lease at any time during the term, provided, however, he gives written notice of his intention to the party of the second part thirty days prior to the date of cancellation decided upon."

There is no dispute about the facts in the case, and unless the landlord has exercised his option thus above shown to have been specially reserved to him of canceling this lease, then the term of same would not have expired until September, 1907, and, as the month's rental sued for long antedated the fixed period of expiration, the defendant was answerable for the amount sued for and obligated to pay same. On March 5th one Henry Keale personally wrote the following letter to the defendant:

"Dear Sir: The owner of the building, No. 687 Lexington avenue, requests me to say that the rent of the apartment now occupied by you in that building will be at the rate of $60 per month from and after May 1st next. Kind-

ly let me know whether or not you desire to keep the apartment at this rent and oblige,

"Yours very truly,                              Henry Keale."

And this letter, read in the light of the right of cancellation reserved in the lease, presents the only question involved in this litigation, because, as heretofore stated, all the facts being conceded, the question turns on whether from this writing is to be spelled the exercise by the landlord of the right reserved unto him to terminate the tenancy before the time fixed in lease for expiration. In our judgment the agent who wrote that letter was clothed with full authority to represent the landlord, and, whatever the purport of his act, it is binding upon the principal, and with that statement we dismiss that feature of the case.

But what motive prompted the sending of this letter, and what purpose was sought to be worked by it? Examined from any viewpoint it is impossible to interpret it in any sense as exercising the right of cancellation reserved. It was not a 30-day notice, such as was called for by the terms of the lease. In not a syllable of the writing is there a reference to a cancellation of or intent to cancel an existing lease, and while it does refer to an intention to put a higher price upon the occupancy of the apartment after a given date, to wit, May 1st, some 40 or 50 days in the future, it expressly invites the views of the tenant as to whether he will continue upon the increased basis, showing clearly, not an intent to exercise an absolute right established by an existing contract, but, when that contract should expire, a statement of terms under which a new contract could be entered into between the parties, if they so desired. Of course, the landlord was mistaken as to his power to do this, because the existing contract did not expire on May 1st, but on September 1st of the same year, and he could not, had he attempted, enforce the payment of such increased rental; and this, it seems to me, is the test to apply in determining the question presented by this litigation. We are not left in any doubt about, nor have we cause to conjecture, that, this letter of March 5th was sent through mistake as to the date of fixed expiration. The correspondence clearly demonstrates it, and the defendant himself was fully imbued with the belief, as shown by his testimony, and was fully apprised of same, and in what we believe was ample time.

The correspondence following the letter of March 5th clearly indicates the construction and interpretation put upon it by the parties. Neither party treated the letter as an exercise of the option reserved in the lease. It is unfortunate that the defendant has taken upon himself contractual obligations that may prove onerous; but in the light of all the circumstances, and the proof adduced, it is in our judgment impossible to reach any other conclusion than that the letter of March 5th was sent by the landlord under the mistaken impression that the lease expired by its express terms on May 1st, and what was intended was, not an invitation to the tenant to vacate the premises, but rather to stay, provided he would meet the increase of rental; that the landlord had not thereby exercised the right of cancellation, nor was any such idea conveyed thereby; that the lease did not end until

September 1st; and that the defendant was answerable to the demand for payment, and must respond.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.